[No. A052120. First Dist., Div. Two. Sept. 30, 1991.]

UNITED AIRLINES, INC., Petitioner, v.
THE SUPERIOR COURT OF SAN MATEO COUNTY, Respondent;
ROGER TERRY et al., Real Parties in Interest.

## COUNSEL

Bronson, Bronson & McKinnon, Robert C. Gebhardt, R. Michael Kasperzak, Jr., and Lynn A. Bersch for Petitioner.

No appearance for Respondent.

J. Patrick Heron for Real Parties in Interest.

## OPINION

**PETERSON, J.**—Real parties Roger Terry and his wife filed this lawsuit against Terry's employer, petitioner United Airlines, Inc., after United conducted a workplace investigation—prompted by the complaints of Terry's female coemployees that they had been sexually assaulted and harassed. Terry and his wife claimed United's investigation of these charges was tortious, and allowed them to sue United in state court for defamation, negligent and intentional infliction of "emotional harm," and loss of consortium. United moved for summary judgment, asserting these state law tort

claims regarding a workplace investigation of alleged employee misconduct were preempted by the federal Railway Labor Act (RLA) (45 U.S.C. § 151 et seq.). The trial court denied the motion.

We conclude, based upon our examination of relevant federal and state authorities, that these claims are in fact preempted by the RLA. (*DeTomaso* v. *Pan American World Airways, Inc.* (1987) 43 Cal.3d 517 [235 Cal.Rptr. 292, 733 P.2d 614]; accord, *Miller* v. *United Airlines, Inc.* (1985) 174 Cal.App.3d 878 [220 Cal.Rptr. 684]; *Magnuson* v. *Burlington Northern, Inc.* (9th Cir. 1978) 576 F.2d 1367; *Melanson* v. *United Air Lines, Inc.* (9th Cir. 1991) 931 F.2d 558; but cf. *McCann* v. *Alaska Airlines, Inc.* (N.D.Cal. 1991) 758 F.Supp. 559.) We will, therefore, grant the relief requested.

I. FACTS AND PROCEDURAL HISTORY

We briefly summarize the relevant facts.

A female United employee complained that, while working on United premises one evening, she had been grabbed from behind and sexually fondled by a man who ran away into another employee area. She gave a description of the attacker and his clothing. United supervisors quickly determined that Terry, who appeared agitated and nervous, was the only person in the area who matched the description of the attacker.

That same evening, Terry was questioned about the incident, with his union representative present; Terry initially refused to answer any questions, but agreed to speak after the union steward counselled him to do so. His responses were memorialized in a signed written statement, in which he admitted he walked past the victim, alone, around the time of the attack, "but did not talk to her. . . . [and] did not grab [the victim] or anyone else in the manner they described."

However, other United employees also told United's investigators that Terry had made unwelcome sexual comments to them on the job.

United concluded that, while Terry was "strongly implicated" in the attack on the victim, the evidence was insufficient to support a case of misconduct sufficient for discharge, because the victim could not positively identify Terry as the man who attacked her from behind and ran away. United prepared a letter apprising Terry of these facts. The letter also stated that other employees had complained about sexual harassment by Terry, and warned him such behavior was unacceptable in the workplace.

Terry was not suspended or discharged; he was not formally disciplined in any other way. Terry did not file any employee grievance concerning

United's conduct. He and his wife instead filed this action in San Mateo Superior Court against United and certain of its named supervisory employees, asserting tort claims under state law.

United and the other defendants moved for summary judgment, relying upon federal preemption as a defense. The trial court denied the motion. United sought a writ of mandate overturning that decision; we issued an order to show cause, and subsequently directed further briefing of the preemption issue.

## II. DISCUSSION

■  We conclude the state law tort claims in issue here are indeed preempted by federal law, because these claims concern an employer's investigation of alleged misconduct on the part of a union employee whose employment rights are exclusively governed by a collective bargaining agreement and the RLA. Such an employee cannot avoid the preemptive force of federal law by pleading only state law causes of action.

*DeTomaso* v. *Pan American World Airways, Inc., supra,* 43 Cal.3d 517, is directly on point. There our Supreme Court unanimously rejected contentions by an airline employee that his state law tort claims of defamation and "emotional distress" (*id.* at p. 523) would survive federal preemption, where the claims arose from an employer's workplace investigation of alleged misconduct. "When the RLA mandates that a claim be resolved by resort to arbitration and grievance procedures, those procedures are the exclusive remedy available to the claimant." (*Id.* at p. 526.) "Here, as previously noted, the collective bargaining agreement *required* that an investigation and hearing take place before an employee could be discharged or disciplined." (*Id.* at p. 530, italics in original.) "In sum, because the investigation giving rise to and forming the basis of the allegedly offensive conduct was required by the collective bargaining agreement, the risk of judicially imposed liability for it cannot be said to be merely 'peripheral' to federal labor policy. DeTomaso's exclusive remedy was in the grievance adjustment procedures . . . . The Court of Appeal erred in concluding otherwise." (*Id.* at p. 533.)

The Supreme Court in *DeTomaso* adopted the same test for RLA preemption previously adopted by the Sixth District in *Miller* v. *United Airlines, Inc., supra,* 174 Cal.App.3d 878. The employee in *Miller* contended an employer investigation of her job performance constituted misconduct which led to her suicide attempt, and she sought to avoid preemption of her state claims because she thought her RLA grievance remedies were inadequate. The Sixth District rejected this argument: "Our review of the relevant case

authority persuades us that plaintiff's contention has no merit, because federal law preempts state law in the case at bar." (*Id.* at p. 887.)

Also directly on point is a 1991 decision by the Ninth Circuit Court of Appeals, *Melanson v. United Air Lines, Inc., supra,* 931 F.2d 558. "All three of Melanson's state law claims would intrude, then, upon the collective bargaining system established by Congress under the RLA. Even under the narrower preemption test of section 301 [of the Labor Management Relations Act], we held similar claims preempted . . . ." (*Id.* at p. 563.) "The same considerations compel preemption here, even more strongly. The entire 'minor dispute' resolution system of the RLA was intended to provide prompt resolution, without resort to the courts, of disputes arising out of the employment relation." (*Id.* at p. 564.)

To the same effect is *Magnuson v. Burlington Northern, Inc., supra,* 576 F.2d at pages 1369-1370, which held that preemption under the RLA extends to all "minor disputes" which are " 'arguably' " covered by the collective bargaining agreement, or are "inextricably intertwined with the grievance machinery of the collective bargaining agreement and of the R.L.A.," or have a " 'not obviously insubstantial' " relation to the labor contract. (Accord, *Edelman v. Western Airlines, Inc.* (9th Cir. 1989) 892 F.2d 839, 843-844; *Grote v. Trans World Airlines, Inc.* (9th Cir. 1990) 905 F.2d 1307, 1309.)

In analogous circumstances, this court (Division Two) has also recently resisted ingenious attempts to escape federal labor law preemption by resort to artful pleading of state law claims. (See *Rodriguez v. Yellow Cab Cooperative, Inc.* (1988) 206 Cal.App.3d 668 [253 Cal.Rptr. 779]; *Machinists Automotive Trades Dist. Lodge v. Peterbilt Motors Co.* (1990) 220 Cal.App.3d 1402 [269 Cal.Rptr. 911].) The rationale of these cases decided under the National Labor Relations Act applies with at least equal vigor to employment in railroad and airline industry jobs regulated by the RLA: "The RLA's grievance procedure would become obsolete if it could be circumscribed by artful pleading." (*Melanson v. United Air Lines, Inc., supra,* 931 F.2d at p. 561, fn. 1.)

However, our own research disclosed, and we brought to the attention of counsel for additional briefing, a recent decision by the federal district court for the Northern District of California which seemingly reached a contrary result on similar facts, *McCann v. Alaska Airlines, Inc., supra.*

Critical analysis reveals *McCann*'s precise holding only concerned federal court removal jurisdiction. *McCann* held state law claims brought by an airline employee concerning an investigation of an on-the-job theft, removed

by a defendant to federal court on the basis of preemption under the RLA, must be remanded to the state court since the claims did not affirmatively arise under federal law.

The exercise of a federal district court's unreviewable power to remand claims to state court, of course, is not necessarily the same as a determination of whether those claims on their merits—even though not removable to federal court—would nonetheless be preempted by federal law if asserted by way of defense in state court. (Cf. *Galvez* v. *Kuhn* (9th Cir. 1991) 933 F.2d 773, 776 ["In short, it is critical [in analyzing federal decisional law] to distinguish the *merits* of the case from its jurisdictional basis . . . . That his suit might not survive a motion for summary judgment in *state* court is irrelevant to whether it has its place in a *federal* forum to begin with." Italics in original.].)

We leave to the federal courts the abstruse question of whether state law claims which are preempted by the RLA nevertheless are not claims "arising under" that federal law, for purposes of the removal statute. (28 U.S.C. § 1441(b); cf. *McCann* v. *Alaska Airlines, Inc., supra,* 758 F.Supp. 559 [state claims were improperly removed because they were not completely preempted by the RLA] with *Magnuson* v. *Burlington Northern, Inc., supra,* 576 F.2d at pp. 1368-1369 [state claims, removed to federal court, were completely preempted by the RLA].)

The *McCann* court, it is true, also indicated in dicta that it favored a much more circumscribed scope for RLA preemption of state claims than has been applied in the other authorities cited in this opinion. However, the *McCann* court did not have the benefit of the Ninth Circuit's recent ruling on this point in *Melanson, supra,* which held such claims—once properly removed to federal court—are in fact preempted by the RLA, on their merits. (931 F.2d at p. 564.) In light of this more recent reaffirmation of federal preemption principles by the Ninth Circuit in *Melanson,* and the square holding to the same effect by our own Supreme Court in *DeTomaso,* we conclude the state law claims in issue here are federally preempted, despite the contrary indications of the *McCann* opinion. (*Melanson* v. *United Air Lines, Inc., supra,* 931 F.2d at p. 564; *DeTomaso* v. *Pan American World Airways, Inc., supra,* 43 Cal.3d at p. 532; cf. also *Newberry* v. *Pacific Racing Ass'n* (9th Cir. 1988) 854 F.2d 1142, 1149-1150 [finding federal preemption of a state claim which arose in part from "the defendants' conduct in the investigation" of plaintiff employee's alleged misconduct].)

Terry's other arguments to avoid preemption of his state law claims need not detain us long. He suggests the claims might escape preemption under a narrow exception for employer misconduct which is " 'outrageous.' " (Cf.

*Farmer* v. *Carpenters* (1977) 430 U.S. 290, 305 [51 L.Ed.2d 338, 353, 97 S.Ct. 1056].) However, both the Ninth Circuit and our Supreme Court have rejected such an attempt to transmute an RLA grievance into a state law tort claim: "In the context of the employer's investigation, the very allegations that form the basis of the inquiry, which may lead to disciplinary action, cannot be the predicate for the outrageous conduct on which the state tort action is based." (*DeTomaso* v. *Pan American World Airways, Inc., supra*, 43 Cal.3d at p. 531; accord, *Magnuson* v. *Burlington Northern, Inc., supra*, 576 F.2d at p. 1369.) Moreover, here there was clearly nothing " 'outrageous' " about United's supervisors' actions in investigating complaints by female United employees of sexual harassment by a coworker. For the same reasons, the derivative claims asserted by Terry's wife are preempted as well; they arise from the same alleged employer misconduct in conducting an investigation of Terry's on-the-job behavior, which "cannot be the predicate for the outrageous conduct on which the state tort action is based." (*DeTomaso* v. *Pan American World Airways, Inc., supra*, 43 Cal.3d at p. 531.)

Terry also contends he has no remaining grievance remedy under the RLA, since he was not discharged and his union told him there was nothing further the union could do for him. However, the employee in *DeTomaso* made essentially the same argument, since he had been reinstated with full backpay and had nothing further to gain from a grievance. (43 Cal.3d at pp. 523, 532.) The Sixth District in *Miller* v. *United Airlines, Inc., supra*, squarely rejected this argument, finding that the employee's opinion as to the adequacy of the RLA grievance procedures was not determinative. (174 Cal.App.3d at p. 887.)

The relevant question is not whether Terry, who already seems to have achieved a very favorable outcome in avoiding discipline, would likely obtain an even more favorable *result* under the grievance procedure; the question is whether the grievance procedure under the RLA is his exclusive *remedy* in the sense of a potential means of obtaining relief. It is. "If such an avenue is available, it will usually constitute the only avenue of redress." (*DeTomaso* v. *Pan American World Airways, Inc., supra*, 43 Cal.3d at p. 532; *Miller* v. *United Airlines, Inc., supra*, 174 Cal.App.3d at p. 887; cf. also *Machinists Automotive Trades Dist. Lodge* v. *Peterbilt Motors Co., supra*, 220 Cal.App.3d at pp. 1411-1412 [administrative unfair labor charge was the exclusive remedy, displacing state law claims, even though appellants thought they could not prevail on such a charge].) It is axiomatic that preemption applies where there is a remedy *provided* under the RLA, even though an employee might prefer a potentially more lucrative state law remedy; if this were not true, the preemption doctrine would not exist in this context at all.

Here, regardless of Terry's preference for litigation under state law, the state law claims are "inextricably intertwined" with, and in fact " 'arguably' " arise directly out of, the precise grievance machinery which constituted Terry's exclusive remedy. (*Magnuson* v. *Burlington Northern, Inc.*, *supra*, 576 F.2d at pp. 1369-1370; accord, *DeTomaso* v. *Pan American World Airways, Inc.*, *supra*, 43 Cal.3d at p. 531; *Miller* v. *United Airlines, Inc.*, *supra*, 174 Cal.App.3d at p. 889; *Melanson* v. *United Air Lines, Inc.*, *supra*, 931 F.2d at p. 564.) The claims in issue are, therefore, preempted.

### III. DISPOSITION

Let a peremptory writ of mandate issue to respondent court, directing it to vacate its order denying the motion for summary judgment and to enter a new order granting the motion.

Kline, P. J., and Smith, J., concurred.

The petition of real parties in interest for review by the Supreme Court was denied January 22, 1992.